IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Magistrate Judge Kathleen M. Tafoya**

Civil Action No. 15–cv–01372–KMT

THERESA JORDAN, individually and on behalf of the Proposed Colorado Rule 23 Class,

    Plaintiff,

v.

MAXIM HEALTHCARE SERVICES, INC.,

    Defendant.

---

# ORDER

---

This matter is before the court on "Plaintiff's Motion and Memorandum in Support of Her Motion for Partial Summary Judgment" (Pl. Mot.) [Doc. No. 103] filed August 1, 2017 and on "Defendant Maxim Healthcare Services, Inc.'s Cross-Motion for Summary Judgment and Opposition to Plaintiff's Motion for Summary Judgment" (Cross Mot.) [Doc. No. 108] which was filed on September 1, 2018. "Plaintiff's Response to Defendant's Cross-Motion for Summary Judgment and Reply to Defendant's Opposition to Plaintiff's Motion for Partial Summary Judgment" (Pl. Resp.) [Doc. No. 109] was filed on October 2, 2017 and "Defendant Maxim Healthcare Services, Inc.'s Reply in Support of Cross-Motion for Summary Judgment" (Df. Reply) [Doc. No. 111] was filed on October 20, 2017.

**INTRODUCTION**

The crux of this case involves unpaid overtime for employees employed by a third party agency. More specifically, Plaintiff was a certified nursing assistant employed by Defendant from February 2007 to December 2013. (Doc. No. 4 ["Comp."] at 2). The parties agree that Plaintiff was a home health care worker ("HHCW") who would be classified as a provider of companionship services. (Pl. Mot. at 5-6.) Defendant is a for-profit healthcare services company that provides its customers with in-home personal care and management and/or treatment of a variety of medical and non-medical conditions. (Compl. at 2.) While employed by Defendant, Plaintiff was paid on an hourly basis and was not paid overtime compensation. (*Id*. at 4-5.) On May 27, 2015, Plaintiff sued Defendant alleging that it failed to pay her, and the Rule 23 class of HHCWs she represents, overtime wages under Colorado's Wage Act, C.R.S. §§ 8-4-101, *et seq.* ("CWA"), Minimum Wage Order ("MWO"), and 7 Colo. Code Regs 1103-1, § 5 ("CCR"). *Id*.[1]

To date, the case has turned on the interpretation of the CWA's companion exemption, 7 Colo. Code Regs. § 1103-1.5, which exempts certain employees providing home health care services from overtime protections. In a previous motion to dismiss under Fed. R. Civ. P. 12(b), Defendant contended that the exemption applies to Plaintiff and the potential class members. Plaintiff contended that, according to the plain language of the exemption, it applies only to companion employees that are employed by households or family members—and not those employed by third parties, such as Defendant. The court disposed of the statutory interpretation

---

[1] These Colorado laws and regulations will generally referred to as the CWA unless context demands otherwise.

of the companion exemption on March 17, 2016. (Doc. No. 59.) That order adopted Plaintiff's preferred interpretation.

In the parties' instant motions, however, Defendant seeks to re-litigate interpretation of the companion exemption.[2] For reasons that the court will address *infra*, those arguments are rejected. It is improper, at least at this juncture, that the interpretation of the companion exemption be re-litigated based on the motions before the court. The more prudent course is for this to be addressed by way of motion to re-consider (if at all). As such, the issues in play for present purposes include:

- Whether Defendant is entitled to judgment under a safe-harbor defense.
- Whether the court's interpretation of the companion exemption in Doc No. 59 should apply retroactively.
- Whether Defendant is liable for overtime wages to Plaintiff based on the court's statutory interpretation of the companion exemption in its previous order. (Doc. No. 59.)
- Whether liability is mitigated to a two-year Statute of Limitations period.

The court largely adopts Plaintiff's preferred positions on these issues albeit with one exception: the two-year Statute of Limitations defense. The court finds this defense applicable here because any alleged overtime violations were not willful under the CWA.

## LEGAL STANDARDS

Summary judgment is appropriate if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party bears the initial burden of showing an absence of evidence to support the nonmoving party's case. *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). "Once the moving party meets this burden, the burden shifts to the nonmoving party to demonstrate a

---

[2] The court notes that Plaintiff also addresses statutory interpretation in its motion (Doc. No. 103); however, it quotes to the court's previous Rule 12(b)(6) order. (Doc. No. 59.)

3

genuine issue for trial on a material matter." *Concrete Works, Inc. v. City & County of Denver*, 36 F.3d 1513, 1518 (10th Cir. 1994) (citing *Celotex*, 477 U.S. at 325). The nonmoving party may not rest solely on the allegations in the pleadings, but must instead designate "specific facts showing that there is a genuine issue for trial." *Celotex*, 477 U.S. at 324; *see also* Fed. R. Civ. P. 56(c). A disputed fact is "material" if "under the substantive law it is essential to the proper disposition of the claim." *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 670 (10th Cir.1998) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). A dispute is "genuine" if the evidence is such that it might lead a reasonable jury to return a verdict for the nonmoving party. *Thomas v. Metropolitan Life Ins. Co.*, 631 F.3d 1153, 1160 (10th Cir. 2011) (citing *Anderson*, 477 U.S. at 248).

Where a court is satisfied that the only genuine issue is a question of law, the court may determine the question and grant summary judgment.[3] *Cf. Plascenia v. Taylor*, 514 F. App'x 711 (10th Cir. 2013); *see also McPherson v. Kelsey*, 125 F.3d 989, 995 (6th Cir.1997) (allowing appellate review of a motion for summary judgment on the ground of governmental immunity because . . . the issue before the court was "purely one of law").

It is worth noting, as here, that Defendant indicates that the "material facts of this case are straightforward and undisputed"—making for ease of disposition as to most of the issues before the court. (Doc. No. 108 at 3.)

---

[3] *See, e.g., Paschal v. Flagstar Bank*, FSB, 295 F.3d 565, 571-72 (6th Cir. 2002) (permitting post-trial, post-judgment review of a denial of summary judgment based upon a legal issue— tolling of the statute of limitations—that did not require the resolution of any disputed facts)

4

## ANALYSIS

There is utility in first setting out the statutory framework and addressing why re-litigation of the statutory interpretation issue in the court's March 17, 2016 opinion is inappropriate. (Doc. No. 59.)

### A. Statutory and Regulatory Framework

For the purposes of background, the CWA does not contain a specific overtime requirement. Instead, Colorado's overtime requirements are established by the Colorado Division of Labor ("DOL") through a regulatory enactment known as a Minimum Wage Order ("CMWO"). *See* Colo. Rev. Stat. §§ 8-6-104, -106, -108.5. The current version, CMWO, became effective on January 1, 2018. 7 C.C.R. § 1103-1.[4] Relevantly, 7 C.C.R. § 1103-1:4 requires that all employers provide overtime compensation to employees that work in excess of 40 hours in one work week or in excess of 12 hours in one day at a time-and-a-half rate. But 7 C.C.R. § 1103-1:5 provides certain exemptions from the CMWO's overtime requirements:

> The following employees or occupations, as defined below, are exempt from all provisions of Minimum Wage Order No. 34: administrative, executive/supervisor, professional, outside sales employees, and elected officials and members of their staff. Other exemptions are: ***companions, casual babysitters, and domestic employees employed by households or family members to perform duties in private residences***, property managers, interstate drivers, driver helpers, loaders or mechanics of motor carriers, taxi cab drivers, and bona fide volunteers. Also exempt are: students employed by sororities, fraternities, college clubs, or dormitories, and students employed in a work experience study program and employees working in laundries of charitable institutions which pay no wages to workers and inmates, or patient workers who work in institutional laundries.

---

[4] The current Minimum Wage Order does not materially differ from the previous CMWO in effect during time-periods relevant to this lawsuit in spite of the recent federal cases and the changes made to the FLSA.

*Id.* (emphasis provided).[5]

In contrast to the wording of the CWA, the FLSA explicitly provided, up until its amendment on January 1, 2015, that its companionship services exemption specifically <u>did</u> apply to third party employers of such providers. Title 29 C.F.R. § 552.109(a) stated:

> (a) Employees who are engaged in providing companionship services, as defined in § 552.6, ***and who are employed by an employer or agency other than the family or household using their services, are exempt from the Act's minimum wage and overtime pay requirements by virtue of section 13(a)(15).*** Assigning such an employee to more than one household or family in the same workweek would not defeat the exemption for that workweek, provided that the services rendered during each assignment come within the definition of companionship services.

Title 29 C.F.R. § 552.109(a) (emphasis added). In contrast, the FLSA now provides, as of January 1, 2015:

> (a)Third party employers of employees engaged in companionship services within the meaning of § 552.6 ***may <u>not</u> avail themselves of the minimum wage and overtime exemption*** provided by section 13(a)(15) of the Act, even if the employee is jointly employed by the individual or member of the family or household using the services. However, the individual or member of the family or household, even if considered a joint employer, is still entitled to assert the exemption, if the employee meets all of the requirements of § 552.6.[6]

*Id.* (emphasis added). In other words, through careful and thoughtful wording, the federal lawmakers made themselves abundantly clear concerning the exemption's application in connection with companionship services when the companions were employed by third party employers rather than by households or family members directly. Colorado DOL rulemakers, however, did not take their cue from the wording of the federal Rule if mirroring the federal law

---

[5] The court will refer to the highlighted portion of the regulation as the "companion exemption."

[6] Section 552.6 defines what specific duties and services actually fit the definition of "companionship services."

was their intent.  Since Colorado had guidance from a carefully worded federal rule, the inference drawn by this court is that Colorado did not intend for the CWMO to mirror the FLSA, but was instead choosing a path more protective of the individual worker by excluding third party employers from the exemption.

### B.  Statutory Interpretation is Improperly Postured in Defendant's Motion

Much of the analysis above underscored the court's March 17, 2016 opinion (Doc. No. 59 at 4-11)—an opinion that was bolstered by the decision of Judge Christina M. Arguello addressing the same statutory interpretation issue. *See Kennett v. Bayada Home Health Care, Inc.*, 135 F. Supp. 3d 1232 (D. Colo. 2015). Notwithstanding the decision of this court (and that of *Kennett)*, Defendant again reloads with a bevy of statutory interpretation arguments to support its preferred position, most of which repeat what has been argued before. (Doc. No. 108 at 10-17.)  Embedded on page 12 is the following request for review:

> Respectfully, the Court's prior view should be revisited. First, it does not accord the proper deference owed to the Colorado DOL's longstanding interpretation of its own regulation. Second, it creates a conflict between that regulation and its implementing statute. Third, it relies on an interpretive approach that is contrary to recent U.S. Supreme Court precedent.

*Id.* at 10.

Contrary to Defendant's protestations, the court declines to revisit the very issue it decided earlier in these proceedings. (Doc. No. 59.)  *First*, the statutory issue in Defendant's motion was resolved by the court's March 17, 2016 opinion. *Id.*  Disposition of that issue addressed a pivotal battleground (*i.e.*, statutory interpretation of the relevant controlling law). The parties have thus proceeded on the basis of that disposition. *Second*, because statutory interpretation is a pure question of law, *see Smith v. Desautels*, 183 Vt. 255 (2008), there are no

7

factual disputes that interplay with the analysis at the Rule 56 stage. Defendant has conceded as much, stating that material facts are undisputed as confirmed on page 4 of this opinion. Indeed, because there are no factual disputes to disturb the interpretation of the statute at this juncture—and because the issue before the court on March 17, 2016 was a pure question of law (as it remains so here)—there is no reason to disturb the court's interpretation from earlier stages in the litigation. (Doc. No. 59) (adjudicating the statutory issue in Plaintiff's favor).

That said, Defendant has possibly raised a new argument based on post-March 17, 2016 law. *See Lockhart v. United States*, 136 S. Ct. 958 (2016).[7] The court does not dismiss that argument in its entirety (at this stage). If, after issuance of this order, Defendant *still* seeks to introduce that argument, and provided Defendant conforms with all relevant deadlines, it is best addressed by way of a motion to reconsider.[8] Although not yielding fruit for the defendant, a similar procedural step was taken by the parties in the *Kennett* case before Judge Arguello. *See*

---

[7] In *Lockhart*, the Court reviewed a statute that prescribed a mandatory minimum sentence for defendants with a "prior conviction … relating to aggravated sexual abuse, sexual abuse, or abusive sexual conduct involving a minor or ward." *See Lockhart*, 136 S. Ct. at 958. In contrast, it is hard not to notice that the series in *Lockhart's* statute involved "or"—not "and" as relevant in the instant case. *See* 7 C.C.R. § 1103-1:5 ("Other exemptions are: companions, casual babysitters, and domestic employees employed by households or family members to perform duties in private residences.")

[8] Before contemplating any motion to reconsider, Defendants would be well served to consider the *Kennett* case, along with the fact that a motion to reconsider is only appropriate where the court has misapprehended the facts, a party's position, or the controlling law. *See Servants of the Paraclete v. Does*, 204 F.3d 1005, 1012 (10th Cir. 2000). But such motions are "inappropriate vehicles to reargue an issue previously addressed by the court when the motion merely advances new arguments, or supporting facts which were available at the time of the original motion." *Id.; see also Nat'l Bus. Brokers, Ltd. v. Jim Williamson Prods., Inc.*, 115 F. Supp. 2d 1250, 1256 (D. Colo. 2000) ("[T]he motion to reconsider is not at the disposal of parties who want to rehash old arguments.... [a] motion to reconsider should be denied unless it clearly demonstrates manifest error of law or fact or presents newly discovered evidence.")

*Kennett v. Bayada Home Health Care, Inc.*, No. 14-CV-02005-CMA-MJW, 2016 WL 374231, at *1 (D. Colo. Feb. 1, 2016) (denying motion to reconsider and holding that that the companion exemption did not apply to home health care workers employed by third parties).

Accordingly, the court's Rule 12(b)(6) opinion dated March 16, 2017 (Doc. No. 59) remains the law of the case—and provides the predicate for the analysis that follows.

### 1. Safe-Harbor Defense

Notwithstanding the above, Defendant challenges any liability under the statute based on a safe-harbor defense. A safe-harbor defense is "[a] provision (as in a statute or regulation) that affords protection from liability or penalty." Black's Law Dictionary (10th ed. 2014).

Relevant to disposition of this issue is the fact that Defendant concedes that the CWA and MWO do not have a safe-harbor provision. Based on this concession, Plaintiff then makes two counter arguments regarding any application of a safe-harbor defense.

The first is that Defendant failed to *plead* a safe-harbor affirmative defense. The court agrees. When Defendant's affirmative defenses are scrutinized, it is notable that there is no express reference to a safe-harbor defense. Yet Defendant points to paragraph 12 of its Answer as providing factual content to support its position—specifically:

> Maxim [aka Defendant] acted in full compliance and conformity with and in reliance on the CWA and MWO and applicable laws, regulations, orders, opinions, and interpretations and with the enforcement policies with respect to the class of employers to which it belongs, and acted in good faith as a reasonably prudent entity/person would have acted under the circumstances and with a belief of reasonable compliance with the CWA and MWO, and had reasonable grounds for believing that its conduct did not violate the CWO and MWO. As a result, Maxim is not subject to any liability for alleged failure to pay wages required by the CWA and MWO . . . .

*Id.* at ¶ 12.

Nowhere in this paragraph is a safe-harbor pleading averred under the CWA or related regulations. Nor can it be inferred without more. Given the novelty of the defense, and the absence of any reference to safe-harbor in paragraph 12, the court has little choice but to waive Defendant's argument. *Bently v. Cleveland County Bd. of County Comm'rs*, 41 F.3d 600, 604 (10th Cir. 1994). And while such an outcome seems harsh, Defendant should have appreciated that the content in paragraph 12 provides factual content to support Defendant's statute of limitations defense. Had Defendant sought to have paragraph 12 carry *both* (1) the safe-harbor defense, *and* (2) the Statute of Limitations defense, it should have said as much (expressly). Defendant's failure to do so cuts against its position.

Alternatively, even if the court is wrong on waiver, Defendant's substantive position fares no better. Defendant argues that although the CWA does not have an express safe-harbor provision, this court should still interpret the CWA in harmony with the FLSA and hold that Defendant can avail itself of a safe-harbor defense on these facts. Said another way, Defendant contends that the court should graft federal law into a state statute without any express written support in the CWA itself. The court rejects this invitation.

*First*, the FLSA's relationship to the CWA is a protective floor—not a ceiling—for employee rights. States can, therefore, through statutory verbiage (or no verbiage at all), use their police powers to add to worker protections above and beyond the federal right. *See generally, Pacific Merchant Shipping Ass'n v. Aubry*, 918 F.2d 1409, 1419-20 (9th Cir. 1990); *Pettis Moving Co., Inc. v. Roberts*, 784 F.2d 439 (2d Cir. 1986); *DeKeyser v. Thyssenkrupp Waupaca, Inc.*, 589 F. Supp. 2d 1026, 1030 (E.D. Wis. 2008) ("It is clear that in enacting the FLSA, Congress did not explicitly preempt state wage and hour laws . . . the FLSA contains a "savings

clause" that expressly allows states to provide workers with more beneficial minimum wages and maximum workweeks than those mandated by the FLSA itself.")

*Second*, the cases that Defendant cites to supporting its position are incongruent with the statutory context of this case—*i.e.*, *Salazar v. Butterball, LLC*, No. 08-CV-02071-MSK-CBS, 2009 WL 6048979, at *15 (D. Colo. Dec. 3, 2009) and *Chase v. Farmers Ins. Exch.*, 129 P.3d 1011, 1015 (Colo. App. 2004). These cases have nothing to do with employee rights as applied to the case in suit, nor constitutional policies regarding the protective floor that federal law provides (and which state law can build upon). The *Chase* case, for example, deals with burdens of proof—not the wholesale creation of a novel defense (a safe-harbor), which infuses state law with a defense not expressed in CWA's statutory language.

As such, because states can add to worker protections under state law, and because the imposition of a safe-harbor defense would dramatically impact those protections, this court sees no reason to adopt such a defense in this case.

### 2. Retroactive Application of this Ruling and the Court's March 17, 2016 Order.

Defendant argues that even if safe-harbor does not apply, the court's March 17, 2016 opinion should only be applied prospectively. To counter, Plaintiff argues that because that decision is a judicial one, the law should be applied retroactively. The court subscribes to Plaintiff's view.

At the onset, Defendant faces an uphill battle because, as a general rule, "statutes operate prospectively, while judicial decisions are applied retroactively." *Martin Marietta Corp. v. Lorenz*, 823 P.2d 100, 111 (Colo. 1992) (citing *United States v. Security Industrial Bank*, 459 U.S. 70, 79 (1982)). To prevail under the exception to judicial decisions being applied

11

retroactively, Defendant must meet a three-part test: (1) "the decision to be applied nonretroactively must establish a new principle of law, either by overruling clear past precedent on which litigants may have relied . . . or by deciding an issue of first impression whose resolution was not clearly foreshadowed"; (2) the court must determine whether retroactive application will advance or impede the new rule's "purpose and effect"; *and* (3) the court must consider "the inequity imposed by retroactive application" and strive to avoid "substantial inequitable results." *Id.* at 112 (*quoting Chevron Oil Co. v. Huson*, 404 U.S. 97, 106-07 (1971)).

Here, even if the court were to determine that its March 17, 2016 opinion was a new principle of law or decided an issue of first impression whose resolution was not clearly foreshadowed, prongs (2) and (3) still cut against Defendant's position.[9] More specifically, Defendant's non-retroactive position would defeat the very purpose that the CWA was promulgated to serve. Indeed, the "purpose of the [CWA] is to ensure that wages are paid in a timely manner and to provide adequate judicial relief in the event wages are not paid." *Fang v. Showa Entetsu Co.*, 91 P.3d 419, 421 (Colo. App. 2003). Because applying the statutory interpretation analysis only prospectively would undermine the purpose of the CWA, Defendant's position must be rejected.[10]

---

[9] There is no Tenth Circuit law on whether an issue of statutory interpretation constitutes an issue of first impression. The parties do not cite to any law and the court's independent research does not identify any relevant case law, either.

[10] Generally, Section 4 of the CMWO requires employers pay their employees at a premium rate—one and a half times their regular wage—for any work in excess of 40 hours per work week, or in excess of 12 hours per workday. 7 C.C.R. 1103-1:4 unless covered by an exemption. *Kennett*, 135 F. Supp. 3d at 1238.

Congress passed the FLSA to protect workers from substandard wages and oppressive working hours. *Hein v. PNC Fin. Servs. Group, Inc.*, 511 F.Supp.2d 563, 569 (E.D.Pa. 2007). The FLSA

Compounding the position against it, Defendant's response (Doc. No. 108) does not meaningfully deal with the second prong of the *Martin Marietta* framework—*i.e.*, that the court must determine whether retroactive application will *advance or impede* the new rule's "purpose and effect." 823 P.2d 100, 111-12. There is no reference to policy—let alone its impact—in Defendant's briefing until the reply. (Doc. No. 111 at 12-13.) As the parties are well aware, at this point of briefing any new arguments are waived. *See Doolin Sec. Sav. Bank v. Office of Thrift Supervision*, 156 F.3d 190, 191 (D.C.Cir. 1998) (refusing to consider arguments raised only in the reply brief). And even if this conclusion as to waiver is faulty (which it is not), to the extent that Defendant's reliance argument bleeds into factor (2) from factor (3), the court finds that it does not outweigh Plaintiff's position that retroactive application is consistent with the CWA. *See Fang*, 91 P.3d at 421 (discussing the employee centered policies of the statute).

As to factor (3), Defendant's primary position is rooted in reliance theory (albeit wrongful reliance). Defendant argues that "it would be fundamentally unjust to impose overtime liability on Maxim during a time when the Colorado DOL expressly informed Maxim that its companions were subject to the overtime exemption." (Doc. No. 108 at 24.)

While not completely aligned with Defendant's argument, a similar argument was made in a Southern District of Ohio decision—and rejected. *See Dillow v. Home Care Network, Inc.*, No. 1:16-CV-612, 2017 WL 749196, at *4 (S.D. Ohio Feb. 27, 2017) (Black J.) ("Defendant . . .

---

is intended primarily to benefit low-wage workers rather than managers or administrators; managers or administrators are less susceptible to employer abuse. *Id*.; *Maestas v. Day & Zimmerman, LLC*, 972 F. Supp. 2d 1232, 1236 (D.N.M. 2013). The same can be said of state minimum wage regulations such as the CWA and the accompanying CMWO.

states that retroactive application is inequitable in that it requires Defendant to go back in time to comply with regulations that had technically not gone into effect.")

Just as Judge Timothy S. Black rejected Defendant's position in *Dillow*, so too here. Indeed, "[i]t is disingenuous to suggest that Defendant, or any other similarly situated party, could not anticipate that there was a significant possibility" that interpretation of the CWA could turn against Defendant's preferred statutory interpretation (as it did) —particularly when the instant case commenced in June 2015.[11] *Id.* at *4.

To counter, Defendant contends that it relied on the Colorado DOL for interpretative purposes. But that adjudication was not a judicial one, nor correct. The Colorado DOL's faulty interpretation constituted a hollow victory for Defendant against those companion employees it then employed (and who were not paid overtime). And because of its paucity, that victory should not now shield Defendant from retroactive liability; ever more when the Colorado DOL got it wrong. As a matter of principle (and commonsense), reliance on a wrongful executive interpretation as a shield could "create a perverse incentive for a party" to lengthen out an appellate process with a defendant knowing that a shield could exist during the time period up until final judicial disposition by the judiciary at the appellate level . *Id.* This leads to delay tactics—and hardly constitutes an equitable result that conforms with the underlying purposes of the *Martin Marietta* framework.

This view is only reinforced because, under the CWA, Defendant was always required to pay overtime. Unlike the FLSA, the verbiage of the CWA has remained static. And despite past opportunities to amend the statute—restricting worker protections—the state legislature has

---

[11] This was months before Defendant started complying with the federal law in October 2015.

remained silent, thereby keeping the rule in place. Granted, the Colorado DOL has sent mixed messages and Defendant has mistakenly relied on those messages. But to now deviate from the law that the state legislature promulgated would not just reflect whimsical law-making, it would run counter to the policy of the CWA—leading to inconsistent and unjust outcomes.

Critically, Defendant's business decision to rely upon the obviously flawed DOL interpretation (being a non-judicial interpretation) does not show a change in the law; rather, it only shows, as Plaintiff posits, that Colorado DOL chose not to enforce the law the way it was written under its flawed interpretation of the exemption. The law, that is the language of the CWA itself, never changed. And nor did its meaning: the language requires Defendant to pay the Plaintiff (and the class) overtime for their overtime hours worked. While Defendant argues that it has relied upon DOL's executive branch interpretations; employees of Defendant have relied on the language of the statute and the court's judicial interpretation. The equities clearly favor the latter—thus factor (3), like factor (2), cuts against Defendant. *Cf. Marbury v. Madison*, 5 U.S. 137, 177, 2 L. Ed. 60 (1803) ("It is emphatically the province and duty of the judicial department to say what the law is.")

One final point is worth noting: fortifying the court's holding of retroactive application of the March 17, 2016 interpretation is the fact that Defendant never, really, acknowledges that *Martin Marietta's* framework is an *exception*—not the rule.[12] 823 P.2d at 112 ("statutes operate

---

[12] Generally, judicial decisions are applied retroactively. This principle was affirmed by the United States Supreme Court in *Harper v. Virginia Dep't of Taxation*, 509 U.S. 86, 97 (1993):

> When this Court applies a rule of federal law to the parties before it, that rule is the controlling interpretation of federal law and must be given full retroactive effect in all cases still open on direct review and as to all events . . . Mindful of the "basic norms of constitutional adjudication" that animated our view of retroactivity in the criminal

prospectively, *while judicial decision are applied retroactively*.") (emphasis added.) As such, because the presumption weighs against Defendant's preferred position, and since at least two of the three factors under the exception cut against Defendant, the court holds that the March 17, 2016 order applies retroactively.

### 3. Liability under the Statute

Based on the previous analysis, the next issue to determine is whether Defendant is liable for overtime wages to Plaintiff based on the court's statutory interpretation of the companion exemption in its previous order. (Doc. No. 59.)

To eliminate any question on this issue, the parties have each conceded that liability under the statute rises and falls on the statutory interpretation of the companion exemption—specifically, "[w]hoever wins . . . on the question of whether a third party employer—like Maxim—can utilize the companionship services exemption of the CWA will also win the District Court class action.") (*See* Doc. No. 83 at 2 n.2). Save its safe-harbor and retroactivity arguments—being arguments that have been unsuccessful—Defendant also agrees with Plaintiff regarding the binary outcome of statutory interpretation. (Doc. No. 108 at 19).

Accordingly, since Plaintiff was successful on the statutory interpretation issue in earlier proceedings (Doc. No. 59), Defendant is liable under the CWA for violations of same.

---

context, id., at 322, 107 S.Ct., at 712, we now prohibit the erection of selective temporal barriers to the application of federal law in noncriminal cases. In both civil and criminal cases, we can scarcely permit "the substantive law [to] shift and spring" according to "the particular equities of [individual parties'] claims" of actual reliance on an old rule and of harm from a retroactive application of the new rule. Beam, supra, 501 U.S., at 543 (opinion of SOUTER, J.). Our approach to retroactivity heeds the admonition that "[t]he Court has no more constitutional authority in civil cases than in criminal cases to disregard current law or to treat similarly situated litigants differently." American Trucking, supra, 496 U.S., at 214, (STEVENS, J., dissenting).

### C. Two-year Statute of Limitations Defense

As held above, Defendant is liable under the CWA. In an attempt to mitigate the loss against it, however, Defendant raises the issue of whether Plaintiff's claim is subject to a two-year Statute of Limitations period. Defendant's argument holds merit.

In Colorado, the limitations period for state-law wage claims is ordinarily two years. Colo. Rev. Stat. § 8-4-122. That period can only be extended to three years where a plaintiff proves that a violation was willful. *See Farley v. Family Dollar Stores, Inc.*, No. 12-00325, 2013 WL 500446, at *1 (D. Colo. Feb. 11, 2013) ("The [CWA] has a two year statute of limitations for all actions unless the violation was willful[.]").  To establish that a wage violation was willful, "plaintiffs must prove that the employer either knew or showed reckless disregard for the matter of whether its conduct was prohibited by the statute." *Bayles v. Am. Med. Response of Colo.*, Inc., 937 F. Supp. 1477, 1489 (D. Colo. 1996) (applying the "willful" component of the FLSA) (quotations omitted.)

While Defendant's reliance theory did not gain traction on the issues previously addressed in this opinion, it does so with respect to its two-year Statute of Limitation defense. Defendant's reliance on Colorado DOL establishes that it has not willfully violated the CWA. The willful standard is a high threshold—essentially a punitive one—making it near-impossible for a plaintiff employee to prove because even where "an employer acts unreasonably, but not recklessly, then its conduct is *not* willful." *Barber v. Marjon Corp.*, 791 P.2d 1192, 1194 (Colo. App. 1989) (emphasis added.)   Here, by relying on the DOL's interpretation, while wrong, Defendant still took a non-negligent step in determining whether the companion exemption

17

applied (or not). This is not reckless behavior, let alone willful intent to violate—rising to the need for punitive sanction. *Id.; see also Bayles*, 937 F. Supp. at 1489.

Notwithstanding the facts of this case, however, had Defendant failed to take this step, and simply relied on the lack of Colorado case law on this issue, then the story could well have been different given how wrong the DOL's interpretation has turned out to be. Both *this* court and Judge Arguello's decision in *Kennett* confirms this. In the latter, the court was struck by the fact that "Defendant's reading of the Companion Exemption . . . fail[ed] to account for its grammatical structure; specifically. . . (1) the placement of commas after the terms companions and casual babysitters, and (2) the fact that the word **and** appears immediately before domestic employees." *Kennett*, 135 F. Supp. 3d at 1241.

Sealing the case against Defendant, the court's holding on Statute of Limitations defense squares with disposition of the other issues in this opinion. For instance, where the safe-harbor argument did not provide solace for Defendant—because it is not expressed in the statute—the two-year Statute of Limitation provision does allow Defendant to prevail on this issue. *See* Colo. Rev. Stat. § 8-4-122. That section *expressly* provides: "All actions brought pursuant to this article shall be commenced within two years after the cause of action accrues and not after that time; *except that all actions brought for a willful violation of this article* shall be commenced within three years after the cause of action accrues and not after that time." *Id.* So too here.

Because Defendant's actions do not rise to the heady heights of willfulness under the statute, Defendant succeeds in restricting the period of liability to a two-year period.

## CONCLUSION

In sum, the court largely subscribes to Plaintiff's positions with the exception of the two-year Statute of Limitations defense consistent with the reasoning in this opinion.

**WHEREFORE**, for the foregoing reasons, this court **ORDERS** as follows that:

1. Defendant's Motion for Summary Judgment (Doc. No. 108) is **DENIED** in part and **GRANTED** as to the two-year Statute of Limitations defense consistent with this opinion.

2. Plaintiff's Motion for Summary Judgment (Doc. No. 103) is **GRANTED** in part and **DENIED** as to the two-year Statute of Limitations defense consistent with this opinion.

3. By April 12, 2018, the parties are to file a joint document summarizing what issues remain in these proceedings (if any) for further disposition.[13]

Dated this 29th day of March, 2018.

BY THE COURT:

Kathleen M. Tafoya
United States Magistrate Judge

---

[13] Among other issues, because Plaintiff does not succeed on the two-year Statute of Limitations defense, the figures it provides as to Defendant's violation is incalculable based on the facts it provides in briefing. (Doc. No. 103 at 11.)